# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Bankruptcy Case No. 15-40878-JDP |
| Stephen J. Anderson and Melanie Anderson, | |
| Debtors. | |

## MEMORANDUM OF DECISION

**Appearances:**

    Aaron J. Tolson, TOLSON & WAYMENT, PLLC, Ammon, Idaho, Attorney for Stephen and Melanie Anderson, Debtors.

    Jason R. Naess, PARSONS, SMITH, STONE, LOVELAND & SHIRLEY, LLP, Burley, Idaho, Attorney for Gary L. Rainsdon, Trustee.

### *Introduction*

In this chapter 7[1] case, trustee Gary L. Rainsdon ("Trustee") filed a motion for turnover ("the Motion") requesting that the Court order debtors

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532.

MEMORANDUM OF DECISION – 1

Stephen J. Anderson and Melanie Anderson ("Debtors") to pay over certain real estate commissions they had received to Trustee for distribution to creditors. Dkt. No. 43. Debtors objected to the Motion. Dkt. No. 44. The Court conducted an evidentiary hearing concerning the Motion on July 6, 2016, ordered simultaneous post-hearing briefing of the issues, and took the issues under advisement, Dkt. No. 56. Having now considered the evidence, testimony and record in this case, the arguments of the parties, as well as the applicable law, this Memorandum constitutes the Court's findings of fact, conclusions of law, and decision concerning the Motion. Fed. R. Bankr. P. 7052; 9014.

*Facts*

Debtors are both licensed real estate agents. During the relevant period, they worked together for an agency, Keller Williams Realty East Idaho ("Keller"), as part of Mike Hicks' sales "team". As explained at the hearing, although Debtors both hold realtor's licenses, in order to sell real estate, they need to be associated with a licensed broker, hence their

MEMORANDUM OF DECISION – 2

affiliation with Keller.[2]

As licensed realtors, Debtors work to both connect buyers with desired real estate, as well as to identify sellers and list their real property for sale through Keller. The business model employed by Keller is different than that utilized by most agencies. Rather than Debtors having to manage all of the various tasks associated with the buying and selling of real estate for their clients, at Keller, Debtors spend the bulk of their time interacting with buyers and sellers. Other duties, like preparation of marketing materials, property photography, document production, signature acquisitions, and such are done by Hicks' staff at Keller. Keller also provides training to its realtors.

For these services, Debtors pay Keller a fee called a "cap". Because Debtors work jointly, they split one cap between them. Their current cap is $18,000 yearly, and their anniversary date is April 1st. When Debtors arrange a sale of real estate, and a commission is owed, that commission is

---

[2] Debtors list themselves as "Self Employed" on schedule I. Bankruptcy schedules, Ex. 101 at 43.

MEMORANDUM OF DECISION – 3

paid directly to Keller, which retains 36% of it until the full $18,000 cap is met each year. After subtracting the amount to be applied to Debtors' cap, Keller then cuts two checks to split the balance of the commission according to the Group/Team Contract in place. Debtors' contract provides that when they act as the buyer's agent, they get 60% of the net commission, while Hicks gets 40%. Ex. 115. When they are the listing agents in a transaction, Debtors get 55% and Hicks gets 45%. *Id*.

As part of its business model, Keller encourages its agents to have a separate business entity into which the earned commissions are paid, which in turn pays the realtor a salary. Prior to their bankruptcy filing, Debtors had organized, owned, and operated a company they called Melanie Anderson Realty, Inc. This entity was closed out shortly before the bankruptcy petition was filed. However, following the filing of the petition, on September 17, 2015, Debtors created a new business entity called Bastille Enterprises, Inc. ("Bastille"). Ex. 111. Melanie Anderson is the sole shareholder of Bastille, while Stephen Anderson is an employee. Bastille pays certain business expenses, as well as some of Debtors'

MEMORANDUM OF DECISION – 4

personal expenses. Bastille also pays a salary to both Stephen and Melanie. Accordingly, when Keller receives and disburses a commission, Debtors' share of that commission is paid to Bastille, rather than to them personally. *See* Exs. 113, 201, 203, 205, 207, 209, 211, 213, 215, 217, 219, 221, and 223.

Debtors filed a chapter 7 petition on September 9, 2015. Dkt. No. 1. At that time, Debtors, as realtors were involved in thirteen real estate transactions that were "in process," meaning that a sales contract had been executed by the buyer and seller, but the sale had yet to close. After varying amounts of time and efforts by Debtors, each of these transactions eventually closed, and Keller paid Debtors' share of the commission to Bastille as discussed above.

*Analysis and Disposition*

**I.**

Trustee demanded that Debtors give him the sales commissions generated by those transactions pending on the date of their bankruptcy, and which closed thereafter. On April 6, 2016, Trustee filed the Motion. In

MEMORANDUM OF DECISION – 5

it, he does not seek turnover of the full agents' commission on the sales, but rather, he seeks only the portion paid to Bastille.[3]  Those payments were as follows:

| Property Address | Contract Date | Closing Date | Commission |
| --- | --- | --- | --- |
| 3818 Tawzer | 7/1/15 | 3/31/16 | $4,176.00 |
| 325 Marjac | 9/4/15 | 10/6/15 | $1,896.09 |
| 6027 Gleneagles Dr. | 9/4/15 | 10/5/15 | $4,917.00 |
| 2303 Roy Dr. | 8/1/15 | 10/23/15 | $2,872.10 |
| 311 E. 65th N. Clement | 8/5/15 | 9/30/15 | $13,500.00 |
| 311 E. 65th N. Clement | 8/5/15 | 9/30/15 | $11,940.50 |
| Lot 6 Block 1 Journey's End | 9/1/15 | 9/16/15 | $561.00 |
| 2995 Janessa | 8/10/15 | 9/11/15 | $1,293.60 |
| 3571 Daleen Street | 8/20/15 | 9/28/15 | $3,087.00 |
| Unit 4 G Grizzly Way | 9/1/15 | 10/7/15 | $742.00 |
| 1627 Clarence Roberts | 9/1/15 | 9/22/15 | $2,073.50 |
| 11245 Greenbrier | 9/1/15 | 10/1/15 | $2,291.63 |

---

[3] Likely because they never had possession of the funds, Trustee does not seek turnover from Debtors of the portion of the commissions paid by Keller to Hicks, although an argument could perhaps be made that they, too, are estate property.  Note, also, no cap fees were deducted from the commissions at issue as Debtors' annual cap obligation had been satisfied before these deals closed.

MEMORANDUM OF DECISION – 6

| 3892 Steeplechase Lane | 9/6/15 | 10/8/15 | $3,135.00 |
| Total | | | $52,485.92[4] |

Exs. 113; 201-223.

Trustee contends that the commissions were earned by Debtors prior to the filing of the bankruptcy petition, and therefore are property of their estate under § 541(a)(1), (a)(6) and subject to turnover. Debtors disagree, arguing that the commissions were paid to Bastille, and not to Debtors personally, and therefore are not part of their bankruptcy estate. Debtors pose an alternative argument, contending that in the event the Court determines the commissions are part of their bankruptcy estate, then the Court should find that a portion of the work to earn the commission was performed postpetition, apportion the commission accordingly, and order turnover of only that portion earned prepetition.

## II.

The Bankruptcy Code provides that the bankruptcy estate created

---

[4] Debtors were involved in other deals "in process" at the time the bankruptcy petition was filed, but which ultimately failed to close, so no commissions were paid. Ex. 112.

MEMORANDUM OF DECISION – 7

by the filing of a petition includes "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1).  This estate also includes all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." § 541(a)(6).

Regarding real estate commissions earned by debtor-agents, courts have held that "[w]here the debtor receives a commission post-petition, but essentially fulfilled all of his obligations for that commission pre-petition, the commission will be deemed property of the estate." *Tully v. Taxel (In re Tully)*, 202 B.R. 481, 483 (9th Cir. BAP 1996).  Put another way, "a debtor's commission is property of the estate 'if all the acts of the debtor necessary to earn it are rooted in the pre-bankruptcy past.'" *Id.* (quoting *In re Sloan*, 32 B.R. 607, 611 (Bankr. E.D.N.Y. 1983)) (citing *Segal v. Rochelle*, 382 U.S. 375, 380 (1966)).  However, in the event the debtor's services required to earn the fees were performed both before and after the bankruptcy filing, the estate is entitled to recover the portion of the

MEMORANDUM OF DECISION – 8

payment attributed to prepetition services, even though the payment is not made until after the bankruptcy filing. *Jess v. Carey (In re Jess)*, 169 F.3d 1204, 1207 (9th Cir. 1999) (discussing trustee's entitlement to debtor-attorney's contingent fees for cases settled after bankruptcy). The BAP, in *In re Jess*, held that:

> [t]he proper analysis . . . is to first determine whether any postpetition services are necessary to obtaining the payments at issue. If not, the payments are entirely "rooted in the pre-bankruptcy past" and the payments will be included in the estate. If some postpetition services are necessary, then courts must determine the extent to which the payments are attributable to the postpetition services and the extent to which the payments are attributable to prepetition services. That portion of the payments allocable to postpetition services will not be property of the estate. That portion of the payments allocable to prepetition services or property will be property of the estate.

*In re Jess*, 215 B.R. 618, 620 (quoting *In re Wu*, 173 B.R. 411, 414-15 (9th Cir. BAP 1994)).

The question of when a realtor has earned a commission is answered by state law. *In re Tully*, 202 B.R. at 483-84. Prior to 1993, in order for a real estate broker to earn a commission in Idaho, the only requirement was

MEMORANDUM OF DECISION – 9

that he or she procure a buyer who was ready, willing and able to purchase on terms acceptable to the seller. *Commercial Ventures, Inc. v. Rex M. & Lynn Lea Family Trust*, 177 P.3d 955, 959-60 (Idaho 2008). However, in that year, the Idaho Supreme Court adopted the rule from *Ellsworth Dobbs, Inc. v. Johnson*, 236 A.2d 843 (N.J. 1967). Thereafter, to earn a commission, in addition to procuring a ready, willing, and able buyer, the buyer must actually enter into a binding contract with the seller, and the buyer must complete the transaction by closing the deal in accordance with the contract terms. *Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 259-60 (Idaho 1993). This difference in standards is potentially significant in a bankruptcy case, where the timing of events can be critical, because while the real estate broker must produce the ready, willing, and able purchaser, both of the additional elements to qualify for a commission must be performed by the purchaser.

### III.

In this case, Trustee is entitled to the commissions, as "all the acts of the debtor necessary to earn it are rooted in the pre-bankruptcy past." *In*

MEMORANDUM OF DECISION – 10

*re Tully*, 202 B.R. at 43; *see also In re L.D. Patella Constr. Corp.*, 114 B.R. 53, 55-56 (Bankr. D. N.J. 1990) (applying *Ellsworth Dobbs*, the bankruptcy court held that "[s]ince the contract between the debtor and [the buyers] was signed before the debtor's bankruptcy petition was filed, the debtor's argument that no postpetition services are required of [the realtor] is correct.")

In *Tully*, as in this case, the real estate broker arranged a sale of property prior to filing his bankruptcy petition, but his commission was not paid until the sale closed, which occurred after bankruptcy. Like Debtors contend here, the real estate broker argued that because he performed significant postpetition services (such as arranging financing for the purchaser), and earning the commission was dependent on those postpetition services, the commission, when paid, was not property of the bankruptcy estate. The BAP rejected this argument, reasoning that "[a]t the time of his petition, there was nothing left for [the debtor] to do." *Tully*, 202 B.R. at 484. While the Panel recognized that the broker performed some postpetition services, it relied on the bankruptcy court's

MEMORANDUM OF DECISION – 11

factual findings that those services were not essential for the broker to be compensated, but were, instead, a courtesy to the buyer to facilitate consummation of the deal. *Id*.

Employing this same reasoning in this case yields the proper resolution of the Motion. For those deals which were "in process" when Debtors filed their petition, in which the parties had signed a purchase agreement, and which thereafter ultimately closed, Debtors had performed all the services necessary under the law to earning a commission. Accordingly, because Debtors' services which produced the commission were all "sufficiently rooted in the prebankruptcy past," their share of the commission constitutes property of the bankruptcy estate.

Moreover, under Idaho law, only a licensed real estate broker or salesperson is entitled to collect a real estate commission, Idaho Code § 54-2054. Thus, as the licensed agents, the commissions in this case belonged to Debtors, not to their corporation. That Debtors had entered into a contract with Keller to have their commissions paid to Bastille, a corporation they created after their bankruptcy filing, does not alter the

MEMORANDUM OF DECISION – 12

result.  Under § 542(a), a debtor must turn over possession, *or account to the trustee,* for any property of the estate.  Debtors' creation of a corporation after filing for bankruptcy to receive their share of commissions cannot be used to deflect their obligation to account to Trustee for commissions constituting property of the estate in this case.  *See Newman v. Schwartzer (In re Newman)*, 487 B.R. 193, 200 (9th Cir. BAP 2013) (in a case involving tax refunds, holding that, since they were property of the estate, that debtor no longer had possession of the funds when the turnover motion was made, did not relieve her of the statutory obligation under § 542(a) to account for the refunds to the trustee).

Debtors attempt to distinguish the cases discussed above by reasoning that the real estate agents in those cases were individuals, unaffiliated with a real estate agency with a right to share in the commissions.  But this distinction makes no difference.  Commission-splitting is common; the Idaho Code specifically provides for it.  Idaho

MEMORANDUM OF DECISION – 13

Code § 54-2054(2).[5] Moreover, the cases cited did not turn on the fact that the debtor-agents therein were not affiliated with a real estate agency.[6] "Real Estate Purchase and Sale Agreement" forms utilized by Debtors list Keller as the "selling agency" and Debtors as the "selling agent". *See* Exs. 200, 202, 204, 206, 208, 210, 212, 214, 216, 218, and 220. And, as noted above, pursuant to Idaho Code § 54-2054, only a licensed real estate broker

---

[5] Idaho Code § 54-2054(2) provides:

(2) Fee-splitting with unlicensed persons prohibited. Unless otherwise allowed by statute or rule, a real estate broker, associate broker or salesperson licensed in the state of Idaho shall not pay any part or share of a commission, fee or compensation received in the licensee's capacity as such in a regulated real estate transaction to any person who is not actively licensed as a real estate broker in Idaho or in another state or jurisdiction. The Idaho broker making the payment to another licensed person is responsible for verifying the active licensed status of the receiving broker. *This section shall not prohibit payment of a part or share of a commission, fee or compensation by the broker to an unlicensed legal business entity, if:*
  *(a) All of the entity's shareholders, members or other persons having a similar ownership interest are active real estate licensees; and*
  *(b) An owner licensed under the broker performed the licensed activities for which the payment is made.*

(emphasis added).

[6] Indeed, in *In re Tully*, the debtor was a licensed realtor affiliated with an agency, 202 B.R. at 482.

MEMORANDUM OF DECISION – 14

or salesperson is entitled to collect a real estate commission.

Having proven that the commissions are part of the bankruptcy estate, Debtors attempt to limit their liability to Trustee by arguing that the commission ought to be apportioned to reflect their pre- and post-bankruptcy efforts. *See* § 541(a)(6). However, while, depending upon the facts, the case law may permit such apportioning, Debtors have given the Court absolutely no evidence which would allow it to make such a determination, beyond Melanie Anderson's testimony that some of the subject transactions required more work than others to get closed. Therefore, Debtors arbitrary suggestion in their briefing that the commissions be split 90%/10% is not supported by the evidence. To benefit from a share of the commissions, as the case law discusses, Debtors must identify and quantify the services they performed postpetition that were necessary to earn the commission for each discrete transaction. Having offered no such proof, the Court declines to speculate in their favor.

### *Conclusion*

MEMORANDUM OF DECISION – 15

The commissions are property of the bankruptcy estate under § 541(a)(1). Debtors have not shown they should be excluded from the estate under the "personal services" exception in § 541(a)(6). Under § 542(a), Debtors are duty-bound to account to Trustee for the commissions. The Motion will be granted and Debtors will be required to turn over $52,485.92 to Trustee.

A separate order will be entered.

Dated: September 16, 2016

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 16